FILED

APR 06 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | S U P E R S E D I N G I N D I C T M E N T |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 3:20CR371 |
| TYRONE RILEY, YVONNE HARPER, GARRICK "GARY" JOHNSON, LARRY SYKES, | ) | JUDGE JAMES G. CARR |
| | ) | Title 18, United States Code, Sections 371, 875(d), 1951, and 2 |
| Defendants. | ) | |

GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. Toledo, Ohio City Council (City Council) was the legislative branch of city government. Legislative authority in the city was vested in a twelve-member City Council. Six members of City Council were elected at-large and six from districts. Each member served four-year terms. TYRONE RILEY represented District 1 and YVONNE HARPER represented District 4. GARRICK "GARY" JOHNSON and LARRY SYKES were at-large representatives.

2. Keith Mitchell (named, but not charged herein) was a licensed attorney working in Toledo, Ohio.

3. Source 1, Source 2, and A.M. were local Toledo business owners who needed City Council approval to open or operate certain aspects of their businesses.

4. R.S. was a Toledo resident and associate of YVONNE HARPER.



5. City Council was authorized to enact ordinances and resolutions relating to city services, tax levies, appropriating and borrowing money, licensing and regulating businesses and trades, and other municipal activities. Often, City Council considered and voted on zoning changes and "special use permits" (SUPs) for local businesses. These requests were evaluated by various departments or committees before approval and were typically discussed and considered at a series of three public hearings: the City Plan Commission meeting, the Zoning and Planning Committee meeting, and a full City Council meeting.

6. The City Plan Commission consisted of a panel of appointed citizens. The Plan Commission evaluated the request and made a recommendation for approval or disapproval. This recommendation was forwarded to the Zoning and Planning Committee, which consisted of a subset of City Council members. At the Zoning and Planning Committee meeting, the request was further evaluated at a public hearing, after which the Committee forwarded its recommendation to the full City Council. Ultimately, City Council had to approve the request for it to become effective. If the Plan Commission forwarded the request with a recommendation for approval, a simple majority of favorable City Council votes was sufficient to approve it. If the Plan Commission forwarded the request with a recommendation for disapproval, a super majority of nine Council members was required to vote in favor of the measure to approve it.

COUNT 1
(Hobbs Act Conspiracy, 18 U.S.C. § 1951)

The Grand Jury charges:

7. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

8. Beginning in or around March 2018 and continuing to in or around March 2020, in the Northern District of Ohio, Western Division, Defendants TYRONE RILEY, YVONNE HARPER, GARRICK "GARY" JOHNSON, LARRY SYKES, and Keith Mitchell (named, but not charged herein), and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree with each other to obstruct, delay, and affect, and attempt to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, RILEY, HARPER, JOHNSON, SYKES, and Mitchell conspired to obtain property for RILEY, HARPER, JOHNSON, and SYKES not due to them or their office, namely cash, money orders, checks, and meals, from Source 1, Source 2, and A.M. (all identified, but not charged herein), with Source 1's, Source 2's, and A.M.'s consent, under color of official right, knowing these things of value were provided in exchange for their official influence, support, and votes as members of the City Council to further various projects of the payors.

All in violation of Title 18, United States Code, Section 1951.

COUNT 2

(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury further charges:

9. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

10. Beginning in or around May 2018 and continuing through May 2019, in the Northern District of Ohio, Western Division, Defendant TYRONE RILEY, as a member of City Council, did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by

extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, RILEY obtained property not due to him or his office, namely cash, money orders, and meals, from Source 1, with Source 1's consent, under color of official right, knowing these things of value were provided in exchange for RILEY's official influence, support, and votes as a member of City Council to further Source 1's project on Dorr Street, Toledo, Ohio.

All in violation of Title 18, United States Code, Section 1951.

COUNT 3

(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury further charges:

11. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

12. Beginning in or around April 2018 and continuing through October 2018, in the Northern District of Ohio, Western Division, Defendant TYRONE RILEY, as a member of City Council, did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, RILEY obtained property not due to him or his office, namely cash, money orders, and checks, from Source 2, with Source 2's consent, under color of official right, knowing these things of value were provided in exchange for RILEY's official influence, support, and votes as a member City Council to further Source 2's project on Holland-Sylvania Road, Toledo, Ohio.

All in violation of Title 18, United States Code, Section 1951.

COUNT 4
(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. §§ 1951 and 2)

The Grand Jury further charges:

13. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

14. Beginning in or around December 2018 and continuing through March 2020, in the Northern District of Ohio, Western Division, Defendant YVONNE HARPER, as a member of City Council, and Keith Mitchell (named, but not charged herein) did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, with help, assistance, and encouragement from Mitchell, HARPER obtained property, not due to HARPER or her office, namely cash and money orders from Source 2, with Source 2's consent, under color of official right, knowing these things of value were provided in exchange for HARPER's official influence, support, and votes as a member of City Council to further Source 2's project on Central Avenue, Toledo, Ohio.

All in violation of Title 18, United States Code, Sections 1951 and 2.

COUNT 5
(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury further charges:

15. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

16. Beginning in or around January 2020 and continuing through March 2020, in the Northern District of Ohio, Western Division, Defendant GARRICK "GARY" JOHNSON, as a

member of City Council, did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, JOHNSON obtained property not due to him or his office, namely a check from Source 2, with Source 2's consent, under color of official right, knowing this thing of value was provided in return for an explicit promise and understanding by JOHNSON to use his official influence, support, and votes as a member of City Council to further Source 2's project on Central Avenue, Toledo, Ohio.

All in violation of Title 18, United States Code, Section 1951.

COUNT 6

(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury further charges:

17. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

18. Beginning in or around October 2019 and continuing through February 2020, in the Northern District of Ohio, Western Division, Defendant TYRONE RILEY, as a member of City Council, did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, RILEY obtained property not due to him or his office, namely cash from Source 2, with Source 2's consent, under color of official right, knowing this thing of value was provided in exchange for RILEY's official influence, support, and votes as a member of City Council to further Source 2's project on Central Avenue, Toledo, Ohio.

All in violation of Title 18, United States Code, Section 1951.

COUNT 7
(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury further charges:

19. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

20. Beginning in or around May 2019 and continuing through February 2020, in the Northern District of Ohio, Western Division, Defendant LARRY SYKES, as a member of City Council, did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, SYKES obtained property not due to him or his office, namely cash from Source 2, with Source 2's consent, under color of official right, knowing this thing of value was provided in exchange for SYKES's official influence, support, and votes as a member of the City Council to further Source 2's project on Central Avenue, Toledo, Ohio.

All in violation of Title 18, United States Code, Section 1951.

COUNT 8
(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury further charges:

21. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

22. Beginning in or around July 2019 and continuing through January 2020, in the Northern District of Ohio, Western Division, Defendant LARRY SYKES, as a member City Council, did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by

extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, SYKES obtained property not due to him or his office, namely cash from Source 2, with Source 2's consent, under color of official right, knowing this thing of value was provided in exchange for SYKES's official influence, support, and votes as a member of City Council to further Source 2's projects on Reynolds Road, Toledo, Ohio, and his official influence, support, and votes to enact legislation placing a moratorium on accepting new applications for a license to operate internet cafés/sweepstakes terminals for six months thereby halting new competition.

All in violation of Title 18, United States Code, Section 1951.

COUNT 9
(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury further charges:

23. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

24. Beginning in or around August 2019 and continuing through January 2020, in the Northern District of Ohio, Western Division, Defendant TYRONE RILEY, as a member of City Council, did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, RILEY obtained property not due to him or his office, namely cash from Source 2, with Source 2's consent, under color of official right, knowing this thing of value was provided in exchange for RILEY's official influence, support, and votes as a member of City Council to further Source 2's projects on Reynolds Road, Toledo, Ohio, and his official influence, support, and votes to enact legislation placing a moratorium on accepting new applications for a license to operate internet cafés/sweepstakes terminals for six months thereby halting new competition.

All in violation of Title 18, United States Code, Section 1951.

COUNT 10

(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. §§ 1951 and 2)

The Grand Jury further charges:

25. Paragraphs 1 and 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

26. Beginning in or around April 2019 and continuing through July 2019, in the Northern District of Ohio, Western Division, Defendant YVONNE HARPER, as a member City Council, and Keith Mitchell (named, but not charged herein) did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, with help, assistance, and encouragement from Mitchell, HARPER obtained property, not due to HARPER or her office, namely a check from A.M. with A.M.'s consent, under color of official right, knowing this thing of value was provided in return for an explicit promise and understanding by HARPER to use her official influence, support, and votes as a member of City Council to further A.M.'s project on Manhattan Boulevard, Toledo, Ohio.

All in violation of Title 18, United States Code, Sections 1951 and 2.

COUNT 11

(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury further charges:

27. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

28. Beginning in or around May 2019 and continuing through February 2020, in the Northern District of Ohio, Western Division, Defendant TYRONE RILEY, as a member of City Council, did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, RILEY obtained property not due to him or his office, namely cash, checks, and money orders from Source 1, with Source 1's consent, under color of official right, knowing these things of value were provided in exchange for RILEY's official influence, support, pressure, and advice to the City's Plan Commission to further Source 1's project on Dorr Street, Toledo, Ohio.

All in violation of Title 18, United States Code, Section 1951.

COUNT 12
(Hobbs Act Extortion Under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury further charges:

29. Paragraphs 1 through 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

30. In or around April 2020, in the Northern District of Ohio, Western Division, Defendant GARRICK "GARY" JOHNSON, a member of City Council, did knowingly obstruct, delay, and affect, and attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is, JOHNSON obtained property not due to him or his office, namely cash from Source 2 and A.M., with their consent, under color of official right, knowing this thing of value was provided in exchange for JOHNSON's official influence, support, and votes as a member of City Council to further A.M.'s project on Secor Road, Toledo, Ohio.

All in violation of Title 18, United States Code, Section 1951.

COUNT 13
(Conspiracy to Commit Extortion, 18 U.S.C. § 371))

The Grand Jury further charges:

31. Paragraphs 1 and 6 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

32. Beginning in or around November 2019 and continuing through February 2020, in the Northern District of Ohio, Western Division, Defendant YVONNE HARPER, R.S. (identified but not charged herein), and others known to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree with each other to violate Title 18, United States Code, Section 875(d), namely, to transmit in interstate and foreign commerce a communication containing a threat to injure the property and reputation of the addressee, and of another, with intent to extort from any person, firm, association, or corporation, any money or other thing of value.

Introduction

33. On or about November 26, 2019, R.S. (identified but not charged herein) made a Facebook post about a gas station near downtown Toledo, which was in HARPER's district. R.S. alleged that an employee of that gas station used racial slurs when interacting with a female customer from the neighborhood. Source 1 owned the building and leased it to another local businessman. After this social media post by R.S., there were negative remarks on the internet and in-person protests surrounding this gas station.

Manner and Means

34. HARPER, R.S., and others used a series of in-person meetings and telephone calls to tell Source 1 that they had the political and social power to ruin his/her reputation and business and that of his/her lessee if they did not receive $3,000. They threatened ongoing in-person and online protests of Source 1's business.

35. Additionally, HARPER refused to communicate with Source 1 until he/she paid the money, knowing Source 1 had pending matters before City Council.

36. HARPER demonstrated the depth of her political and social power to exert pressure by telling Source 1 that she helped close a nearby business under similar circumstances.

Overt Acts

37. In furtherance of the conspiracy, and to effect the objects and conceal the existence thereof, HARPER, R.S., and others, committed the following overt acts in the Northern District of Ohio:

38. On or about December 13, 2019, HARPER convened a meeting with Source 1, R.S., SYKES, and others. HARPER explained that Source 1 should provide a financial benefit to R.S. to resolve the online and in-person protest.

39. On or about December 31, 2019, R.S. asked Source 1 for $350, which Source 1 paid to R.S., along with an additional $150.

40. On or about January 6, 2020, HARPER reconvened a meeting with Source 1, R.S., and others. HARPER chastised Source 1 for paying R.S. only $500 because she expected more.

41. On or about January 10, 2020, R.S. told Source 1, "listen to me, I don't get disappointed, if I get a dollar, I'm satisfied. . . She (HARPER) feel that I should have got more." R.S. told Source 1 whatever additional money HARPER demands is good with him.

42. On or about January 18, 2020, R.S. contacted Source 1 and advised that HARPER was not happy with the $500, and said that the protests will not go away until Source 1 pays R.S. more money. R.S. said HARPER instructed R.S. to tell Source 1 to compensate R.S. with more money, or "everything is going back on the table."

43. On or about January 18, 2020, R.S. and Source 1 spoke again. R.S. stated, "This is what [HARPER] told me, she said you need to put some more, she said you should have put at least $2,500 on there, she said $500 was unacceptable, she told me, that I saved you guys too much money for $500, that's what she said. I'm just keepin' it real, that's what she told me. She said she's not talking to you until you do something about it . . . ." When Source 1 replied, "How much does she (HARPER) want sir, so we have a good relationship?" R.S. answered, "OK, she said $2,500." When Source 1 inquired whether it was "$2,500 more?" R.S. said, "And it will go away, that is it, $2,500 and that's it. It's over with, and then I'll do the press conference (speak publicly in support of Source 1 and his/her business)."

44. On or about January 22, 2020, R.S. told Source 1, believe me "I talk to her (HARPER) every other day, and she ain't talking to you until you, until she said you do right." R.S. told Source 1 after he/she pays the money, HARPER will talk to him/her again.

45. On or about January 23, 2020, Source 2 met with HARPER on behalf of Source 1 in City Council chambers at One Government Center, Toledo, Ohio. HARPER told Source 2 that Source 1 should have paid R.S. more than $500. She then directed Source 2 to inform Source 1 that he/she needs to pay R.S. $2,500.

46. On or about January 28, 2020, HARPER called Source 1. HARPER admitted to Source 1 that she was intentionally not accepting his/her calls. Source 1 said, "I hope you understand my position too. Ma'am I, do tell [Source 1's business partner] you know, I need to be nice to Yvonne, I need to be nice to this (person). But [Source 1's business partner] argument is, what did you do wrong? What are they going to do to you or to the business? And I want to take it back to [him/her] and say hey, this is what they can do to the business and do to us . . . ." HARPER said, "Well let me tell you. They can do, look at the street with, what she (recounting that Source 1's partner asked what HARPER) can do to your business? Tell [him/her] to go down there on Bancroft and Franklin where the man is selling their place. They lost their liquor license. They have no business in there. Oh it can be done! They can do, you can get a bad name, and I'm tell [R.S.] to contact you. You and [R.S.] get together and you guys can work that out. Get him the money. Okay?"

47. On or about January 31, 2020, R.S. accepted a check for $2,500 from Source 1. R.S. told Source 1 he/she would not have more problems.

48. On or about February 3, 2020, R.S. cashed the $2,500 check from Source 1 at a Genoa bank location.

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.